UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DILKA MURILLO-ROMAN,

                                   Plaintiff,

            -against-

THE PENSION BOARDS – UNITED
CHURCH OF CHRIST et al.,

                                   Defendants.

Case No. 1:22-cv-08365 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Dilka Murillo-Roman ("Murillo-Roman" or "Plaintiff") brings this employment-discrimination action against her former employer, The Pension Boards – United Church of Christ (the "Pension Boards"), and supervisors John Linzey ("Linzey") and Camilia Huggins ("Huggins" and, collectively, "Defendants"). ECF No. 41 (the "First Amended Complaint" or "FAC"). Plaintiff alleges violations of 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"); and the Family Medical and Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA"). FAC ¶¶ 169-226. Before the Court is Defendants' motion to dismiss the First Amended Complaint. ECF No. 43 ("Br."). For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual Background

Unless otherwise stated, the following facts are taken from the First Amended Complaint and assumed to be true for purposes of this motion.  *See Hamilton v. Westchester County*, 3 F.4th 86, 90 (2d Cir. 2021).

Plaintiff was born and raised in Panama before immigrating to the United States as an adult; she speaks English with a Panamanian accent.  FAC ¶¶ 3, 13.  In 1999, the Pension Boards hired Plaintiff as a staff accountant in its General Accounting division.  *Id.* ¶ 11.  In 2005, Plaintiff was promoted to a new role in the Investment Accounting division.  *Id.* ¶ 20.  She received another promotion within the division in 2008.  *Id.* ¶ 21.

In 2005, Plaintiff began interacting with Huggins, then the Pension Boards' Controller, who is Black and of Caribbean descent.  *Id.* ¶ 17-18, 22.  Huggins did not supervise Plaintiff, but she possessed the ability to assign Plaintiff work.  *Id.* ¶ 22.  Huggins often pretended that she could not understand Plaintiff because of her accent; spoke to Plaintiff in a condescending tone; and yelled at Plaintiff.  *Id.*  Plaintiff's direct supervisor at the time, Randy Garrett, also behaved coldly toward Plaintiff and rebuffed her requests for assistance.  *Id.* ¶ 24.

Between 2005 and 2011, Plaintiff communicated her concern with Huggins's and Garrett's behavior several times to the Pension Boards' then-director of human resources.  *Id.* ¶ 26.  Between 2011 and 2012, Plaintiff complained more formally to the same director about Huggins's and Garrett's behavior.  *Id.* ¶ 27.  Plaintiff reported that Huggins spoke to her rudely; yelled at her; and treated her more harshly than other employees.  *Id.*  She suggested that Garrett seemed to mirror Huggins's treatment of her, and that this treatment was because of her ethnicity, national origin, and accent.  *Id.* ¶¶ 28-29.  In response, the human-resources director held a meeting with Plaintiff and Garrett to attempt to mediate the situation.  *Id.* ¶ 30.

In the winter of 2014, Plaintiff was demoted, moving back to the General Accounting department to replace an outgoing accountant. *Id.* ¶ 34. Huggins supervised Plaintiff in her new role, assigning her a heavier workload than that of her colleagues but refusing to answer questions about these assignments. *Id.* ¶¶ 37, 40-41. Huggins continued to mock Plaintiff's accent. *Id.* ¶ 38.

While Huggins did not supervise Plaintiff directly for most of 2016, she resumed supervising Plaintiff in October 2016 and continued her previously described behavior: yelling at Plaintiff, ridiculing her accent, and assigning "more work than was her fair share." *Id.* ¶¶ 51, 54, 67-69. In late 2016, "after one of Defendant Huggins's screaming tirades," Plaintiff approached Linzey, the Pension Boards' Executive Vice President who oversaw the Finance and Accounting departments. *Id.* ¶ 55; *see id.* ¶¶ 8, 15. Linzey was unmoved and dismissed Plaintiff's concerns. *Id.* ¶ 55. Plaintiff also reported this incident to the Pension Boards' chief financial officer, suggesting that Huggins's treatment was because of her accent and skin color. *Id.* ¶¶ 56-57. When the chief financial officer said that she planned to speak with Huggins, Plaintiff expressed concern that Huggins would retaliate against her for complaining. *Id.* ¶ 58. Approximately one month later, Plaintiff also reported Huggins's treatment to an outside consultant who had been hired to investigate the Pension Boards' work environment. *Id.* ¶¶ 60-61.

In October 2017, a colleague gave notice that she would retire in about three months. *Id.* ¶ 73. Huggins and Linzey initially informed Donald Spinelli (who is white) and Jeff Adams (who is not) that they would take on the retiring colleague's work duties. *Id.* In January 2018, days before the colleague resigned, Huggins and Linzey informed Plaintiff that she would instead assume most of the colleague's job responsibilities. *Id.* ¶ 74. Spinelli, who took on a "small portion" of the colleague's tasks, was permitted to get help from a coworker; Plaintiff was

not. *Id.* ¶ 79.  Plaintiff alleges that Defendants effectively guaranteed her failure by waiting until January to inform her of the reassignment, when she had only a "very short window" during which the outgoing colleague "could train Plaintiff on her new job responsibilities." *Id.* ¶ 77. Around this time, Huggins also left uncorrected a journal-entry error so that it would appear during audit season as an unreconciled debit for one of Plaintiff's accounts. *Id.* ¶¶ 87-88.

Even after the Pension Boards hired a new supervisor in March 2018 to oversee its General Accounting and Investment Accounting Departments, Huggins continued to mistreat Plaintiff. *Id.* ¶ 82.  In May 2018, Huggins instructed several employees to refrain from cooperating with Plaintiff on work-related matters: she told Linzey's administrative assistant "not to assist Plaintiff with anything work-related" and instructed one of Plaintiff's coworkers not to share information with her. *Id.* ¶ 92.  Huggins reprimanded Plaintiff for taking personal calls at her desk but permitted other employees to make personal calls at work. *Id.* ¶ 93.  In January 2019, Huggins purposefully withheld information without which Plaintiff could not complete a time-sensitive assignment. *Id.* ¶ 94.  Only after Plaintiff's supervisor intervened was Plaintiff able to receive the requested information and complete the task. *Id.* ¶¶ 96-97.

In January 2019, Plaintiff's direct supervisor, Yomara Hernandez ("Hernandez"), shared with Plaintiff her review of Plaintiff's performance for 2018. *Id.* ¶ 104.  Hernandez had graded Plaintiff as "High Performing" in the Individual Performance section of this evaluation. *Id.*  In the comment section, Hernandez wrote:

> [Plaintiff] goes over and beyond normal work hours to complete her work.  It is clear to me that management needs to realistically reevaluate [Plaintiff] workload, [Plaintiff] is currently responsible for reconciling accounts that she does not handle.  It is my recommendation that reconciliations of accounts should be done by the accountant who is responsible for the daily entries of the accounts as they are better suited to investigate discrepancies. Other members of the team and myself are concerned about the

> number of hours [Plaintiff] works and possible impact on her
> health.
>
> I believe [Plaintiff] has very strong work ethics and I would like
> that to continue in 2019.  I also think is important for [Plaintiff] to
> continue to add value is [sic] that we broaden general accounting
> knowledge.  Given her existing commitment to PB she is a staff
> member that would welcome further career development.

*Id.* (alterations in original; emphasis omitted).  Hernandez submitted her evaluation for final

review to Linzey, the head of the Finance and Accounting Departments, who instructed her to

change Plaintiff's rating to "Developing."  *Id.* ¶ 105.  Hernandez refused to do so.  *Id.*  Later that

month, in late January 2019, Plaintiff and Linzey discussed the evaluation, and both signed it.

*Id.* ¶ 107.  But on January 31, 2019, Linzey approached Plaintiff about revising her 2018

performance evaluation.  *Id.* ¶ 108.  Linzey gave Plaintiff a revised draft of the evaluation, telling

her that the "vocabulary wasn't right" in the original evaluation but that "not much was

changed."  *Id.* ¶ 109.  The evaluation contained substantive changes, however, including a

change to her rating under the Individual Performance section from "High Performing" to

"Developing," and changes to Hernandez's comments, which now read as follows:

> [Plaintiff] is committed and shows work ethic, but there are times
> that she needs to raise her hand for help and work with her
> manager to better prioritize the workload.
>
> I think it is important for [Plaintiff] to broaden her general
> accounting knowledge and work on better analyzing
> reconciliations.

*Id.* (alterations in original).  Plaintiff objected to the proposed changes and asked for 24 hours to

review the revised evaluation.  *Id.* ¶ 112.  "[T]owering over [Plaintiff] in an intimidating

manner," Linzey replied in a raised voice, "NO! You have to sign it."  *Id.*  Linzey also demanded

that Plaintiff return her personal copy of the original evaluation.  *Id.* ¶ 113.  Fearing for her

safety, Plaintiff complied with both requests.  *Id.*

On her doctor's advice, Plaintiff took about two weeks off to recover from this incident. *Id.* ¶¶ 116, 123.  In early February 2019, Plaintiff called the Pension Boards' director of human resources, Walter Reyes ("Reyes"), to report her encounter with Linzey.  *Id.* ¶ 121.  Plaintiff sent Reyes an email memorializing the January 31, 2019 incident.  *Id.* ¶ 122.

On February 20, 2019, after Plaintiff had returned to work, Reyes arranged a meeting with Plaintiff and Linzey.  *Id.* ¶ 126.  Describing Linzey's previous behavior as a "misunderstanding," Reyes gave Plaintiff an updated 2018 performance evaluation that revised Plaintiff's Individual Performance rating from "Developing" to "Performing."  *Id.* ¶ 128.  The comment section remained the same as in the revised evaluation.  *Id.*  Scared that she might lose her job, Plaintiff signed the newly revised evaluation but wrote in her disagreement with part of the revised commentary.  *Id.* ¶ 130.

After this meeting, Linzey ignored Plaintiff and "never again acknowledged her presence."  *Id.* ¶ 131.  Hernandez resigned shortly thereafter, and Huggins again became Plaintiff's direct supervisor.  *Id.* ¶¶ 134, 137.  Again, Huggins subjected Plaintiff to the same treatment, which included assigning her "a large and inequitable workload" and "refus[ing] her requests for help."  *Id.* ¶ 137.

On March 28, 2019, Linzey and Huggins assigned Plaintiff an "impossible task" by giving her roughly 24 hours to audit 17,000 Social Security numbers by herself.  *Id.* ¶¶ 138-139 (capitalization omitted).  Due to work-related stress, Plaintiff suffered a medical emergency the next day at work.  *Id.* ¶ 143.  Plaintiff returned on April 2, 2019, and completed the assignment after two to three more days.  *Id.* ¶ 147.

On May 8, 2019, Plaintiff took sick leave for surgery and her subsequent recovery.  *Id.* ¶ 149.  During her recovery, Plaintiff began suffering from chronic anxiety, depression, and post-

traumatic-stress disorder.  *Id.*  She requested leave from the Pension Boards and was initially placed on family medical leave.  *Id.* ¶¶ 150-151.  In July 2019, "based in part on [the Pension Boards'] recommendation," Plaintiff sought and received approval for short-term-disability leave.  *Id.* ¶ 151.  On September 24, 2019 and October 6, 2019, Plaintiff informed human resources of back problems she was experiencing as well as issues she encountered with the Pension Boards' short-term-disability carrier.  *Id.* ¶¶ 154-155.

On October 8, 2019, the Pension Boards informed Plaintiff that her "position had been eliminated" and offered her a severance package.  *Id.* ¶¶ 157-158.  Later that day, the Pension Boards informed Plaintiff that her "position has been absorbed," that she had exhausted her FMLA leave on July 29, 2019, and that, on September 24, 2019, its short-term-disability carrier had denied her claim for benefits.  *Id.* ¶ 159.  Plaintiff claims that the carrier never denied her short-term-disability leave but instead approved its continuation on October 28, 2019.  *Id.* ¶¶ 160, 163.

At the time of her termination, Plaintiff was 57 years old.  *Id.* ¶ 162.  Sometime after the termination, either Huggins or Linzey said that Plaintiff had been terminated because she was "obsolete."  *Id.*  The company hired two new non-Latino employees to perform some of Plaintiff's tasks and assigned her remaining responsibilities to three other accountants.  *Id.* ¶ 167.

## II.   Procedural History

On July 21, 2020, Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination and retaliation.  *See generally* ECF No. 44-1.  On February 8, 2022, the EEOC issued Plaintiff a Notice of Right to Sue.  *See generally* ECF No. 44-2; *see also Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 201 (S.D.N.Y. 2021) ("[P]laintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (brackets and citation omitted)).

On May 9, 2022, Plaintiff filed a Summons with Notice in New York state court, indicating that she would file a complaint alleging employment discrimination (and retaliation for reporting this discrimination) due to her age, race, color, national origin, and disability in violation of Title VII, Section 1981, the ADA, the ADEA, the NYSHRL, and the NYCHRL.  *See* ECF No. 1-1 (the "Summons"); *see also Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012) (a court may "take judicial notice of a document filed in another court to establish the fact of such litigation and related filings" (ellipsis and citation omitted)).  On August 8, 2022, Plaintiff filed an Amended Summons with Notice, adding claims under the FMLA, Equal Pay Act, Fair Labor Standards Act ("FLSA"), and New York Labor Law.  *See* ECF No. 1-2 (the "Amended Summons" or "Am. Summons").

On September 30, 2022, Defendants timely removed Plaintiff's action to this Court.  *See generally* ECF Nos. 1, 16-17.  On February 28, 2023, Plaintiff filed, with Defendants' consent, the operative First Amended Complaint.  ECF Nos. 35, 37-41.  Defendants moved to dismiss the First Amended Complaint on March 21, 2023.  *See* Br.  The motion is now fully briefed and presently before the Court.  *See* ECF Nos. 60 ("Opp."),[1] 61 ("Reply").

## III.    Applicable Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court draws all reasonable inferences in the plaintiff's favor and accepts as true all non-conclusory allegations of fact.  *Id.*  However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts

---

[1] Plaintiff mistakenly labeled her brief as one filed in opposition to Defendants' motion for summary judgment.

that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Defendants argue that (1) Plaintiff's First Amended Complaint is too long, in violation of Rule 8; (2) Plaintiff failed to provide proper notice of her claims; (3) most of Plaintiff's claims are time barred; and (4) Plaintiff fails to state any plausible claims among her nine causes of action.  *See generally* Br.  The Court addresses each of these arguments in turn.

### I.   Technical Objections

Defendants raise two technical objections: first, that Plaintiff's 51-page First Amended Complaint is too long, in violation of Rule 8; and second, that the Court lacks personal jurisdiction over Defendants because Plaintiff's summonses failed to give them proper notice of her claims.  Br. at 6-7.  The Court dispenses with both objections easily.

### A.   Prolixity Under Rule 8

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be simple, concise, and direct."  *Id.* 8(d)(1).  While the district court "has the power . . . to dismiss the complaint or to strike such parts as are redundant or immaterial" where the complaint fails to comply with these requirements, *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (summary order) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)), such dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," *id.* (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

While the First Amended Complaint is at times repetitive, and it certainly provides minute details of Plaintiff's interactions with her prior employer, it is neither as long nor as rambling as other complaints that courts in this Circuit – including those cited by Defendants – have dismissed under Rule 8. *See, e.g.*, *id.* (affirming dismissal of 95-page complaint "that was ill structured and largely indecipherable"); *Washburn v. Kingsborough Cmty. Coll.*, No. 20-cv-00395 (DLI), 2022 WL 843733, at *2 (E.D.N.Y. Mar. 22, 2022) (dismissing 62-page complaint where it was "nearly impossible for the Court to determine which facts are relevant to Plaintiff's claims"); *Tsekhanskaya v. City of New York*, No. 18-cv-07273 (KAM), 2020 WL 5802329, at *6 (E.D.N.Y. Sept. 29, 2020) (dismissing 60-page single-spaced complaint with "rambling, confused and prolix allegations"). Plaintiff's amended complaint "is not the incomprehensible 'labyrinthian prolixity of unrelated and vituperative charges' that Rule 8 was intended to curb." *Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) (per curiam) (quoting *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (per curiam)). Therefore, the Court denies Defendants' request to dismiss the First Amendment Complaint on prolixity grounds.

## B. Proper Notice Under N.Y. C.P.L.R. 305(b)

The existence of personal jurisdiction requires, among other things, that "the plaintiff's service of process upon the defendant [was] procedurally proper." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). "Removal does not waive any Rule 12(b) defenses," including defenses based on defective service and lack of personal jurisdiction. *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996); *see Bomze v. Nardis Sportswear*, 165 F.2d 33, 35 (2d Cir. 1948) ("By removal a defendant does not lose his right to challenge the invalidity of the service in the state court; and thus the first question is whether the service was valid under the New York decisions." (footnote omitted)). Contrary to Defendants' arguments, service of process was procedurally proper here.

N.Y. C.P.L.R. 305(b) provides, in relevant part, that when a summons with notice is served without a complaint, the summons shall contain "a notice stating the nature of the action and the relief sought, and . . . the sum of money for which judgment may be taken in case of default." Both of Plaintiff's summonses met those requirements. Plaintiff's original Summons with Notice sought $2.5 million in relief and stated the nature of Plaintiff's action: "employment discrimination on the basis of Plaintiff's age, race, color; national origin, disability, and retaliation for lawful complaints of harassment and discrimination." Summons at 1. Plaintiff's Amended Summons with Notice did so as well. Am. Summons at 1. Those details provided Defendants with sufficient notice of Plaintiff's claims and the relief sought.

Defendants compare Plaintiff's summonses with those found deficient in *Roth v. State University of New York*, 876 N.Y.S.2d 403 (1st Dep't 2009). In *Roth*, however, the summons with notice stated only general "violations" of various named statutes and required "defendants to guess the precise claims against them." *Id.* at 404. It provided the defendant with no information on the protected class to which the plaintiff claimed membership or the context in which the plaintiff was claiming discrimination. *Id.* The facts here are dissimilar, and the Court comfortably concludes that Plaintiff provided proper notice under N.Y. C.P.L.R. 305(b).

## II.  Timeliness

Defendants next seek to dismiss most of Plaintiff's claims on the grounds that they are untimely. Specifically, Defendants contend that Plaintiff's Title VII, ADA, and ADEA claims accruing before September 25, 2019, FMLA claims accruing before August 8, 2020, NYSHRL and NYCHRL claims accruing before May 9, 2019, and Section 1981 claims accruing before May 9, 2018, are all time barred. Br. at 8-11. In response, Plaintiff relies on the continuing-

violations doctrine to render timely conduct that occurred outside the applicable limitations periods.  Opp. at 6-8.

## A.  Title VII, ADA, and ADA Claims

Under Title VII, a prospective plaintiff must file a charge with the EEOC within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023).[2]  "The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period."  *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, --- F. Supp. 3d ----, 2023 WL 2691622, at *11 (S.D.N.Y. Mar. 29, 2023) (citation omitted).  A 300-day limitations period also applies to Plaintiff's ADA claims, 42 U.S.C. § 12117(a); *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 301 (S.D.N.Y. 2016), and ADEA claims, 29 U.S.C. § 626(d)(1); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 82 (2d Cir. 2023).

Typically, every discrete act that allegedly violates Title VII, the ADA, or the ADEA "gives rise to a freestanding . . . claim with its own filing deadline."  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) (Title VII); *see Gomez*, 191 F. Supp. 3d at 302 (ADA); *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (ADEA).  For plaintiffs alleging unlawful discrimination or retaliation, "discrete discriminatory or retaliatory acts such as termination" are untimely and not actionable "if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period."

---

[2] "Pursuant to a work-sharing agreement between New York and the federal government, . . . any charge filed with the EEOC is also deemed filed with the appropriate state agency."  *Brightman v. Physician Affiliate Grp. of N.Y., P.C.*, 20-cv-04290 (DLC), 2021 WL 1999466, at *5 n.2 (S.D.N.Y. May 19, 2021).  Therefore, the 300-day period applies here.

*Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

The continuing-violation doctrine, however, provides an exception to the 300-day rule.

*See Banks*, 81 F.4th at 259.  "It applies to claims 'composed of a series of separate acts that

collectively constitute one unlawful practice.'"  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir.

2015) (alteration adopted) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d

Cir. 2004)).  The doctrine "thus applies not to discrete unlawful acts . . . but to claims that by

their nature accrue only after the plaintiff has been subjected to some threshold amount of

mistreatment," *id.*, such as hostile-environment claims and claims based on "incident[s] of

discrimination in furtherance of an ongoing policy of discrimination," *id.* (quoting *Chin*, 685

F.3d at 155).  "[T]he doctrine is heavily disfavored in the Second Circuit and courts have been

loath to apply it absent a showing of compelling circumstances."  *Doe v. State Univ. of N.Y.*

*Purchase Coll.*, 617 F. Supp. 3d 195, 209 (S.D.N.Y. 2022) (quotation marks and citation

omitted); *accord Kirkland-Hudson*, 2023 WL 2691622, at *11.

Plaintiff filed her charge with the EEOC on July 21, 2020.  Therefore, all claims

stemming from acts occurring prior to September 25, 2019 – 300 days before she filed her

charge – are time barred unless an exception applies.  Plaintiff argues that her discrimination and

retaliation claims under Title VII, the ADA, and the ADEA are not time barred because they are

subject to the continuing-violation doctrine.  Opp. at 6-7.  These arguments are unpersuasive.

To the extent that Plaintiff frames her Title VII claim against the Pension Boards as a

hostile-environment claim, *see* Opp. at 12, she has not pointed to any continuation of that hostile

environment after September 25, 2019,[3] *see Davis-Garett*, 921 F.3d at 42 (district courts may

consider "the entire scope of a hostile work environment claim, including behavior alleged

outside the statutory time period . . . so long as an act contributing to that hostile environment

takes place within the statutory time period" (emphasis omitted) (quoting *Morgan*, 536 U.S. at

105)).  The only timely allegation relating to Plaintiff's claims is her termination on October 8,

2019.  FAC ¶ 165.  However, the continuing-violation doctrine does not apply in the hostile-

environment context to discrete acts of discrimination, *see Morgan*, 536 U.S. at 113-15, and

"[a]n employee's termination is the paradigmatic 'discrete act' that cannot be part of a hostile

work environment claim," *Percy v. N.Y. (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 583

(S.D.N.Y. 2017) (citation omitted and collecting cases holding that an employee's termination

cannot rescue otherwise untimely hostile-environment claims).

Plaintiff's argument that the Pension Boards' behavior amounted to a discriminatory

policy or practice similarly fails to establish a continuing-violation exception to the 300-day rule.

Opp. at 7.  For the exception to apply, Plaintiff similarly "must at the very least allege that one

act of discrimination in furtherance of the ongoing policy occurred within the limitations period."

*Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004).  Plaintiff has not alleged that

her termination on October 8, 2019, even if discriminatory, was in furtherance of an unlawful

practice or policy.  *See id.* (affirming dismissal of a plaintiff's Title VII claims on this basis).

Plaintiff does not allege the existence of such a policy or practice in her First Amended

---

[3] Whether Plaintiff pleads claims of a hostile work environment is unclear.  While the allegations
in her First Amended Complaint contain some references to a hostile work environment, *see,
e.g.*, FAC ¶¶ 36, 71, 100, 117, 129, none of her nine causes of action asserts a hostile-
environment claim.  For purposes of this motion to dismiss, however, the Court assumes that
Plaintiff asserts such claims.  *Cf. Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 502
(S.D.N.Y. 2013) (considering hostile-environment claims on summary judgment even though the
amended complaint "d[id] not use the words 'hostile work environment'").

Complaint.  Nor does she describe the nature of such a policy or practice in her opposition brief beyond asserting that one exists.  *See Kirkland-Hudson*, 2023 WL 2691622, at *11 (stating that this continuing-violation exception "usually applies only in those cases involving specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests" (citation omitted)).  While a continuing violation can exist where "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," Plaintiff does not connect her treatment by the Pension Boards to any alleged company policy or practice.  *Banks*, 81 F.4th at 259 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)).

Therefore, Plaintiff's only surviving claims under Title VII, the ADA, and ADEA are those alleging a discrete act of discrimination and retaliation from her termination on October 8, 2019.  Notably, the 300-day limitations period does not bar "an employee from using the prior acts as background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113.  "Relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act."  *Davis-Garett*, 921 F.3d at 42 (alteration adopted) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005)).

### B.  FMLA Claims

FMLA claims are subject to a two-year limitations period that extends to three years when the violation is "willful."  29 U.S.C. § 2617(c)(1)-(2); *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 n.3 (2d. Cir. 2021).  A violation is "willful" when the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited."  *Porter v. N.Y. Univ. Sch. of L.*, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam) (citation omitted).  A prospective plaintiff must plausibly allege a "willful" violation to subject her claims to the three-year statute

of limitations. *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53-54 (2d Cir. 2017) (summary order); *see Whiteside*, 995 F.3d at 320 n.3 (citing *Offor* with approval). Noting that Plaintiff first raised her FLMA claims on August 8, 2022, in her Amended Summons with Notice, and that Plaintiff failed to allege willfulness in the First Amended Complaint, Defendants argue that Plaintiff's claims are untimely because they rely entirely on allegations that occurred before August 8, 2020. Br. at 10. Plaintiff does not dispute the untimeliness of her FMLA claims. Opp. at 6 n.1. Defendants' motion to dismiss those claims is therefore granted.

### C. NYSHRL and NYCHRL Claims

A plaintiff must file claims under the NYSHRL and NYCHRL within three years of the alleged discriminatory acts. N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8-502(d); *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). "[A]lthough the Second Circuit has not yet resolved the question of whether EEOC charges toll the statute of limitations for NYCHRL claims, the weight of authority in this District holds that EEOC charges do toll NYCHRL claims." *Dikambi v. City Univ. of N.Y.*, --- F. Supp. 3d ----, 2023 WL 5713716, at *6 (S.D.N.Y. Sept. 5, 2023) (quotation marks and citation omitted); *see Banks*, 81 F.4th at 260 (suggesting the same for NYSHRL claims). Plaintiff brought her NYSHRL and NYCHRL claims on May 9, 2022. The underlying EEOC charge was pending between July 21, 2020 and February 8, 2022, tolling the limitations period for 567 days. Therefore, Plaintiff's claims of discrimination and retaliation under these statutes are time barred only to the extent that they are based on conduct that occurred before October 19, 2017.

Although acknowledging that various allegedly discriminatory acts occurred outside the limitations period, Plaintiff seeks to preserve her challenges to that conduct through the continuing-violation doctrine. Opp. at 6-7. As discussed above, Plaintiff has not alleged how

otherwise time-barred actions dating back to 2005 were taken pursuant to a "discriminatory policy or practice" of the Pension Boards. *Banks*, 81 F.4th at 259 (citation omitted).

Insofar as Plaintiff asserts hostile-environment claims under these statutes, they are timely. *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (noting that "the continuing violations doctrine of the NYSHRL mirrors that of Title VII"); *Dikambi*, 2023 WL 5713716, at *6 (applying continuous-violation doctrine to NYCHRL claim). Plaintiff alleges several hostile statements and actions that plausibly contributed to the hostile environment and that occurred after October 19, 2017, including instances when Huggins "continued" to scream at Plaintiff, mock her accent, belittle her intelligence, reprimand her unfairly, and assign her a disproportionately heavy workload. FAC ¶¶ 80, 93, 137; *see Dikambi*, 2023 WL 5713716, at *6 (denying summary judgment on NYCHRL hostile-environment claim where plaintiff testified that a defendant "continued" to make "sexual and degrading comments" within the limitations period). Drawing all reasonable inferences in Plaintiff's favor, these acts, perpetrated by the same alleged harasser and arguably tied to Plaintiff's race, are "sufficiently related" to Huggins's prior alleged conduct so as to constitute part of the same hostile work environment for purposes of evaluating timeliness. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) (discussing continuing-violation doctrine under Title VII). Earlier related incidents that occurred before the limitations period may be considered with respect to those claims. *See Morgan*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

Defendants argue that Plaintiff cannot establish a continuing violation to support her hostile-environment claims because her First Amended Complaint refers only seven times to a

"hostile" environment in describing conduct between 2005 and 2019.  Reply at 6.  But Plaintiff

alleges steady harassment by Huggins and Linzey that occurred throughout Plaintiff's

employment.  *See, e.g.*, FAC ¶¶ 22, 38, 40-41, 54, 68, 78, 80, 93, 131, 137.  Taken together,

these allegations "involve[] repeated conduct" that "cannot be said to occur on any particular

day."  *Morgan*, 536 U.S. at 115.[4]

### D.  Section 1981 Claims

"The statute of limitations for claims brought under § 1981, as amended by the Civil

Rights Act of 1991, is four years."  *Banks*, 81 F.4th at 260.  For substantially the reasons stated

above, Plaintiff's Section 1981 claims are time barred to the extent that they rely on conduct that

occurred before May 9, 2018.  However, Plaintiff's hostile-environment claims under Section

1981 are timely.  *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011)

(finding applicable the continuing-violation exception to employment-discrimination case

brought under Section 1981).

### III.    Remaining Claims

As noted, Plaintiff brings discrimination and retaliation claims under various statutes.

The Court will begin with her discrimination claims, and then turn to her retaliation claims.

### A.  Discrimination Claims

#### 1.  Title VII and Section 1981 Claims

Plaintiff's claims of race and national-origin discrimination under Title VII and Section

1981 are analyzed under the well-known burden-shifting framework articulated by the Supreme

Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see, e.g.*, *Buon v. Spindler*,

65 F.4th 64, 78 (2d Cir. 2023); *Baptiste v. City Univ. of N.Y.*, --- F. Supp. 3d ----, 2023 WL

---

[4] Beyond arguing that Plaintiff's hostile-environment claims are time barred, Defendants' motion
to dismiss does not otherwise address the merits of those claims.  *See* Reply at 5-6.

4266914, at *3 (S.D.N.Y. June 29, 2023) (Section 1981).  While Plaintiff must eventually

establish a *prima facie* case of discrimination, a "*prima facie* case is an evidentiary standard, not

a pleading requirement."  *Buon*, 65 F.4th at 79 (ellipsis omitted) (quoting *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 510 (2002)); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84

(2d Cir. 2015) ("[A] plaintiff is not required to plead a *prima facie* case under *McDonnell*

*Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss.").  To

defeat a motion to dismiss in a case alleging discrimination under these statutes, Plaintiff "must

plausibly allege that (1) the employer took adverse action against h[er], and (2) h[er] race, color,

religion, sex, or national origin was a motivating factor in the employment decision."  *Vega*, 801

F.3d at 87.  "In other words, absent direct evidence of discrimination, what must be plausibly

supported by facts alleged in the complaint is that the plaintiff is a member of a protected class,

was qualified, suffered an adverse employment action, and has at least minimal support for the

proposition that the employer was motivated by discriminatory intent."  *Littlejohn v. City of New*

*York*, 795 F.3d 297, 311 (2d Cir. 2015); *see Baptiste*, 2023 WL 4266914, at *3 (similarly

requiring a plaintiff at the motion-to-dismiss stage to plead "circumstances that give rise to a

minimal inference of discrimination" for a Section 1981 claim).

   As previously discussed, Plaintiff's Title VII discrimination claim is timely only with

respect to her termination on October 8, 2019.  With respect to that adverse employment action,

however, she has plausibly alleged "at least minimal support for the proposition that the

employer was motivated by discriminatory intent."  *Littlejohn*, 795 F.3d at 311.  Plaintiff alleged

various acts by Huggins and Linzey that could be construed as part of an effort to push her out of

the company: she was assigned a consistently punishing workload, FAC ¶ 80, deprived of

information and other steps needed to complete assignments, *id.* ¶¶ 87, 94, intimidated into

agreeing to an inaccurate evaluation of her performance, *id.* ¶¶ 107-113, 128, and subjected at least once to impossible expectations, *id.* ¶¶ 138-142.  Huggins, as her direct supervisor, issued a steady stream of comments mocking Plaintiff's accent.  *Id.* ¶¶ 38, 54, 68, 80.  Plaintiff's subsequent complaints to human resources and company supervisors about discriminatory treatment because of her accent and skin color went largely unaddressed.  *Id.* ¶¶ 27, 55, 57, 126-27.  Against that backdrop, the Pension Boards' termination of Plaintiff sufficiently raises an inference of discriminatory intent.  *See Littlejohn*, 795 F.3d at 312 (noting that such an inference may be established by, among other things, "the employer's criticism of the plaintiff's performance in ethnically degrading terms . . . or the sequence of events leading to the plaintiff's discharge" (citation omitted)); *Sassaman v. Gamache*, 566 F.3d 307, 314-15 (2d Cir. 2009) ("The failure of an employer to conduct an adequate investigation or to undertake an appropriate response can constitute evidence in support of a Title VII plaintiff's allegations.").

Defendants argue that Plaintiff's Title VII discrimination claim fails because she did not identify similarly situated employees outside her protected group that the Pension Boards treated more favorably.  Br. at 15.  Such allegations, however, offer but one "recognized method" of raising an inference of discrimination.  *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (citation omitted).  In any event, Plaintiff also alleges that Huggins permitted Donald Spinelli, a white male co-worker of Plaintiff's, to seek help from others in completing his assigned work.  FAC ¶ 79.  Given the "totality of the relevant facts," Plaintiff has adequately stated a discrimination claim under Title VII at the pleading stage.  *Vega*, 801 F.3d at 88 (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)); *see Davis-Garett*, 921 F.3d at 42 (permitting consideration of "[r]elevant background evidence . . . to assess liability on the timely alleged act" (citation omitted)).

Defendants appear not to raise additional arguments against Plaintiff's discrimination claim under Section 1981, short of repeating their assertion that the allegations underlying these claims are conclusory.  Br. at 14-15, 18-19; Reply at 9-10.  Because this claim faces a similar, if not identical, analysis against all three defendants (instead of against only the Pension Boards) and sweeps in even more timely conduct than Plaintiff's Title VII claim, it also survives Defendants' motion to dismiss.[5]

### 2.  ADA and ADEA Claims

Claims of discrimination under the ADA and ADEA are also analyzed under the *McDonnell Douglas* framework.  *See Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015) (ADA); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3 (2d Cir. 2021) (ADEA).  To plead a claim of disability discrimination that survives a motion to dismiss, the plaintiff must allege facts to plausibly support a finding that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Dawson*, 624 F. App'x at 767 (quoting *Littlejohn*, 795 F.3d at 311).  Under the ADA, a plaintiff must show that "discrimination was the but-for cause of any adverse employment action."  *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

---

[5] To the extent that Plaintiff asserts disparate-impact claims of discrimination under these two statutes (as well as under the NYSHRL and NYCHRL), they fail because they do not identify a specific employment policy or practice.  *See Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (to establish a *prima facie* case for disparate impact under Title VII, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two" (quoting *Chin*, 685 F.3d at 151)); *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 345 (S.D.N.Y. 2021) (applying the same standard to pre-amendment NYSHRL claims and considering the same factors for NYCHRL claims).  Furthermore, Plaintiff has not come forward with a statistical analysis or otherwise alleged the existence of a disparity.  *See id.* at 209 (noting that "plaintiffs typically rely on statistical evidence to show a disparity in outcome between groups").

To state a claim for age discrimination under the ADEA, a plaintiff similarly "must plausibly allege that adverse action was taken against her by her employer and that her age was a 'but-for' cause of the adverse action." *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 195 (E.D.N.Y. 2016) (quoting *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order)); *see Lively*, 6 F.4th at 302-03 ("[T]he ADEA's requirement that an employer took adverse action 'because of' age requires that age was the 'reason' that the employer decided to act." (alteration adopted) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009))).  This standard contrasts with federal discrimination claims under Title VII, which require only that the protected trait was a "motivating factor" in the adverse action.  *See Vega*, 801 F.3d at 87.

As previously stated, Plaintiff's discrimination claims under the ADA and ADEA are timely only as to her termination.  However, Plaintiff does not allege any facts suggesting that the Pension Boards terminated her because of her disability or age.  Neither Plaintiff's meeting with HR director Reyes on October 8, 2019, nor her email from Reyes on that date, suggested that Plaintiff's disability or age was the reason that the Pension Boards terminated her.  FAC ¶¶ 157, 159.  That two younger employees were hired to perform some of her tasks is not enough by itself to establish an inference that Plaintiff's age was a but-for cause of her termination.  FAC ¶ 167; *see Marcus*, 661 F. App'x at 33 ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive.").  Therefore, the Court grants Defendants' motion to dismiss as to Plaintiff's ADA and ADEA claims.[6]

---

[6] To the extent that Plaintiff pursues a failure-to-accommodate claim under the ADA, that claim also fails.  *See* Opp. at 13.  Plaintiff alleges that the Pension Boards, at various points, never engaged with Plaintiff in an "interactive dialogue" about her disabilities or a reasonable accommodation to which she might have been entitled.  FAC ¶¶ 125, 152, 154, 164.  While these allegations are all untimely, the Pensions Boards in each instance *did* communicate with

3.   NYSHRL and NYCHRL Claims

As with claims under the federal statutes previously discussed, claims of discrimination under the NYSHRL and NYCHRL are analyzed under *McDonnell Douglas*. *Baptiste*, 2023 WL 4266914, at *3 (applying framework to NYSHRL, and NYCHRL claims). "Claims under both Title VII and the NYSHRL . . . are generally treated as 'analytically identical,' and addressed together." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019))).[7]  The NYCHRL, however, is less demanding of plaintiffs than Title VII or the NYSHRL for discrimination claims.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  To state a *prima facie* claim for discrimination under the NYCHRL, a plaintiff need not allege that "discriminatory animus was the but-for cause or even the primary motivation of [her] alleged mistreatment."  *Delo v. Paul Taylor Dance Found., Inc.*, --- F. Supp. 3d ----, 2023 WL 4883337, at *6 (S.D.N.Y. Aug. 1, 2023).  Rather, she need only "show differential treatment – that she is treated 'less well' – because of a discriminatory intent."  *Mihalik*, 715 F.3d at 110.

For the same reasons that Plaintiff's Section 1981 discrimination claim survives Defendants' motion to dismiss, so too do Plaintiff's claims under the NYSHRL and the NYCHRL for race, national origin, ethnicity, and ancestry discrimination.  However, for

---

Plaintiff.  It recommended to Plaintiff in July 2019 that she apply for short-term-disability leave, *id.* ¶ 151, and responded to Plaintiff that its short-term-disability carrier had denied her claim for total-disability benefits, *id.* ¶ 159.  Insofar as Plaintiff kept the Pension Boards "apprised of her condition throughout her leave," those updates did not create a dialogue in which the Pension Boards refused to engage.  *Id.* ¶ 152.

[7] New York amended the NYSHRL in 2019 to render the standard for claims under that statute "closer to the standard of the NYCHRL."  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).  However, this amendment applies to claims that accrued after October 11, 2019; it does not apply retroactively.  *See id.*  Because all of Defendants' alleged conduct occurred before this date, the Court applies the pleading standards of the pre-amended NYSHRL.

substantially the reasons that Plaintiff's ADA and ADEA claims are dismissed, so too are Plaintiff's claims for age and disability discrimination.  Although Plaintiff's claims under these statutes are subject to a longer limitations period than under the ADA and ADEA, Plaintiff's timely claims – that is, those based on conduct that occurred after October 19, 2017 –  rest on the same set of allegations.  Plaintiff's timely age-discrimination claims note only that the Pension Boards hired two younger employees to perform some of her assigned tasks and that either Huggins or Linzey, at some undisclosed time after she had left the company, called her "obsolete."  FAC ¶¶ 162, 167; *see* Opp. at 14.  Even under the more lenient standards of the NYCHRL, these allegations lack a plausible inference that age motivated any of Plaintiff's alleged mistreatment.  *See Williams v. Victoria's Secret*, 15-cv-04715 (PGG), 2017 WL 1162908, at *8-9 (S.D.N.Y. Mar. 28, 2017) (finding the plaintiff's allegation that he was "eventually replaced by someone under the age of 40" insufficient in the NYCHRL context to raise an inference of a discriminatory motive); *Marcus*, 661 F. App'x at 32-33 (holding, albeit in the NYSHRL context, that the plaintiff had not pleaded even "a minimal inference that age was a motivating factor" where he alleged that the defendant was "terminating older employees and replacing them with younger hires" but provided "only a single name and . . . no dates, ages, or reasons with respect to the termination of other employees").  Plaintiff's allegations of disability discrimination are even weaker; they do not connect any action by any defendant to Plaintiff's disability.  Therefore, the Court grants Defendants' motion to dismiss as to Plaintiff's claims of age and disability discrimination under the NYSHRL and NYCHRL.

**B. Retaliation Claims**

Plaintiff next alleges that she was retaliated against for engaging in protected activity under Title VII, Section 1981, and the NYSHRL.[8]  FAC ¶¶ 175-180, 188-193, 201-206.  To state a claim for retaliation under these statutes, a plaintiff generally must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 288-89 (S.D.N.Y. 2020) (citation omitted) (stating the requirements for Title VII, ADEA, NYSHRL, and NYCHRL retaliation claims); *Baptiste*, 2023 WL 4266914, at *4 (same elements for Section 1981 retaliation claim).  If an employee "complains or is critical about the discriminatory employment practices of her employer, that employee has engaged in a protected activity."  *Littlejohn*, 795 F.3d at 318 (brackets, quotation marks, and citation omitted).  An adverse employment action includes conduct that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Duplan v. City of New York*, 888 F.3d 612, 626-27 (2d Cir. 2018) (citation omitted).

"Unlike Title VII discrimination claims, . . . the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Vega*, 801 F.3d at 90

---

[8] Plaintiff declined to respond to Defendants' arguments against her retaliation claims under the ADA, the ADEA, and the NYCHRL.  *Compare* Br. at 21-22, *with* Opp. at 14-16 (addressing retaliation claims under only Title VII, Section 1981, and the NYSHRL).  The Court will, therefore, consider those claims abandoned.  *See Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 704 n.19 (S.D.N.Y. 2011) (noting that the plaintiff abandoned his claims where they "do not appear anywhere in his opposition despite defendants' arguments" against them); *Marom v. Town of Greenburgh*, No. 20-cv-03486 (PMH), 2022 WL 17584279, at *7 (S.D.N.Y. Dec. 12, 2022) (finding claim abandoned where the plaintiff declined to respond to the defendants' arguments on that claim); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09-cv-04472 (PGG), 2010 WL 1222044, at *8 (S.D.N.Y. Mar. 29, 2010) ("failure to adequately brief an argument constitutes waiver of that argument at [the] motion to dismiss stage" (quotation marks and citation omitted)).

(quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).  "It is not enough that

retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Id.* at 90-91;

*see Littlejohn*, 795 F.3d at 315 ("Retaliation claims under Title VII and § 1981 are both analyzed

pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary

framework." (footnote omitted)); *Farmer*, 473 F. Supp. 3d at 330 ("The same standards govern

retaliation claims under [Title VII and the NYSHRL].").  "But-for causation does not, however,

require proof that retaliation was the only cause of the employer's action, but only that the

adverse action would not have occurred in the absence of the retaliatory motive."  *Vega*, 801

F.3d at 91 (brackets, quotation marks, and citation omitted).  "Causation may be shown by direct

evidence of retaliatory animus or inferred through temporal proximity to the protected activity."

*Duplan*, 888 F.3d at 625.

  At the motion-to-dismiss stage, Plaintiff has sufficiently pleaded facts that would

indirectly establish a causal connection between her protected activity and Defendants'

retaliation.  In her First Amended Complaint, Plaintiff states three instances during which she

plausibly complained about her discriminatory treatment: (1) in 2011 or 2012, when she told the

Pension Boards' HR director that she believed that Huggins mistreated her because of her

ethnicity, national origin, and accent; (2) in late 2016, when she told the Pension Boards' chief

financial officer that Huggins was treating her differently because of her accent and skin color;

and (3) on February 2019, when she suggested to Linzey during an HR meeting that he treated

her "differently than other people."[9]  FAC ¶¶ 28, 57, 127.  Plaintiff also alleges that, shortly after

---

[9] Whether this third instance would amount on its own to protected activity is unclear because
Plaintiff's assertion that she complained to HR about being treated "differently than other
people" does not specify that she complained about discrimination due to a protected status.  *See
Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) ("Mere complaints
of unfair treatment are not protected speech in the employment retaliation context, and the onus

this February 20, 2019 meeting, Huggins and Linzey assigned Plaintiff a "large and inequitable workload," which included an "impossible task" on March 28, 2019.  *Id.* ¶¶ 137-139 (capitalization omitted).  Plaintiff took medical leave on May 8, 2019, and she was terminated shortly after that leave expired on October 8, 2019.  *Id.* ¶¶ 149, 159.  Taken together, these allegations plausibly state a claim for retaliation.

Defendants argue that Plaintiff suffered only "mere trivialities," not any adverse employment actions.  Br. at 17.  But "a disproportionately heavy workload can constitute an adverse employment action" for retaliation purposes.  *Kirkland-Hudson*, 2023 WL 2691622, at *22 (quoting *Felty v. Regeneron Pharms., Inc.*, No. 18-cv-05667 (NSR), 2021 WL 860379, at *17 (S.D.N.Y. Mar. 8, 2021)); *accord Hiralall v. Sentosacare, LLC*, No. 13-cv-04437 (GBD), 2016 WL 1126530, at *13 (S.D.N.Y. Mar. 18, 2016) ("[A]n increase in workload may sometimes be an adverse action for the purposes of a retaliation claim if the increase is heavily disproportionate to other employees similarly situated.").  Plaintiff has alleged that her workload was disproportionately heavier than that of her colleagues.  *See* FAC ¶¶ 40, 80, 141.

Defendants also argue that Plaintiff's termination in 2019 – certainly not a "mere triviality" – is too remote from her complaints in 2011 or 2012 and in 2016.  Br. at 17-18.  It is not, however, too remote from her February 20, 2019 meeting with Linzey, especially when paired with Plaintiff's other allegations of retaliation occurring shortly after that meeting.  *See*

---

is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." (quotation marks, ellipsis, and citation omitted)); *see Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016) ("[A]bsent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity." (citation omitted)).  However, in light of Plaintiff's other complaints, one could plausibly conclude that Plaintiff was complaining – in the context of Linzey's behavior as to her 2018 performance evaluation – about unfair treatment because of her race and national origin.

FAC ¶¶ 137-139.  Therefore, the Court denies Defendants' motion to dismiss as to Plaintiff's retaliation claims under Title VII, Section 1981, and the NYSHRL.

### C.  Aiding-and-Abetting Claims

In addition to direct liability, the NYSHRL and NYCHRL each provide for aider-and-abettor liability.  Plaintiff raises claims under these provisions against Defendants Huggins and Linzey.  *Id.* ¶¶ 207-212.

Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article [including discrimination and retaliation], or to attempt to do so."  N.Y. Exec. Law § 296(6).  "To be liable under § 296(6), an individual employee need not have supervisory or hiring and firing power, but must have 'actually participated in the conduct giving rise to the claim.'"  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)).  The NYCHRL also supports claims for aiding and abetting, which are evaluated under the same standard as under the NYSHRL because the "language of the two laws is virtually identical."  *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (quotation marks and citation omitted).

Here, Plaintiff has adequately alleged that Huggins and Linzey "actually participated" in the conduct giving rise to her claims under the NYSHRL and NYCHRL.  *Malena*, 886 F. Supp. 2d at 367 (citation omitted).  Plaintiff states that Huggins, with Linzey's participation, assigned her a disproportionately heavy workload under circumstances suggesting that this mistreatment was because of her accent and skin color.  FAC ¶¶ 137, 139, 141.  Linzey, for his part, took no action to remedy this behavior despite knowing of it.  *See id.* ¶ 55.  Instead, he intimidated Plaintiff into agreeing to an inaccurate evaluation of her work performance.  *Id.* ¶¶ 107-113, 128.

Therefore, the Court denies Defendants' motion to dismiss the aiding-and-abetting claims raised against Huggins and Linzey under the NYSHRL and the NYCHRL.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss regarding Plaintiff's:

- Title VII discrimination and retaliation claims as to her termination;

- Section 1981 discrimination and retaliation claims as to conduct that occurred after May 9, 2018;

- NYSHRL claims of race- and national-origin-based discrimination and retaliation as to conduct that occurred after October 19, 2017;

- NYCHRL claims of race- and national-origin-based discrimination as to conduct that occurred after October 19, 2017; and

- Hostile-work-environment claims under Section 1981, the NYSHRL, and the NYCHRL.

The Court GRANTS Defendant's motion to dismiss as to the rest of Plaintiff's claims, as part of which it DISMISSES Plaintiff's claims under the ADA, ADEA, and FMLA in their entirety.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 42-44.

Dated: January 23, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge

29